Good morning. May it please the Court, my name is Adam Brezine. I'm with the law firm of Holm, Roberts & Owen. We are pro bono counsel to Ms. Anna Hilfinger-Dowell. Ms. Hilfinger-Dowell is seeking a finding that the administrative law judge improperly denied benefits to her deceased husband, Richard Dowell, and that the district court erred in granting summary judgment to the government affirming that finding. In short, and these arguments are set forth fully in the briefs, we believe there is objective medical evidence in the record and subjective symptom testimony in the record that was either not considered or improperly discredited that leaves the administrative law judge's decision tainted with legal error and her residual functional capacity determination not based on substantial evidence. I was a little confused in some of the argument with respect to the use of the autopsy report. You do concede that the ALJ did, in fact, have the autopsy report and did comment on it. Yes, Your Honor. The autopsy report is an exhibit to the ALJ's decision. It was in the record. We believe that the comment, however, either reflects a failure to consider the contents of the autopsy report or just a clear misunderstanding of the contents of the autopsy report. At the ALJ's decision, and this is the first of the key points that we wanted to raise this morning with respect to the autopsy report, at the ALJ's decision in the record at page 22, the ALJ mentions that no treating or examining physician found any impairments in Mr. Dow that met or medically equaled a listed impairment. And we would suggest that if one were to read the autopsy report, and specifically the fact that the coroner found 75 to 90 percent blockage in at least three coronary arteries, that it would be impossible to conclude that an examining physician did not find an impairment that met or medically equaled a listed impairment. I'm sorry. Yes, Your Honor. That listing, the 4.04c, has as one of its components a marked limitation of physical activity. Are you saying that that has to be presumed from the autopsy report, which only shows the physiological problems? Not entirely, Your Honor. What we're suggesting is that if one were to also properly credit the subjective symptom testimony offered by Mr. Dow in his activities of daily living questionnaires and by his wife after he died at the ALJ's hearing, that you would see that he complained, for example, that he was often, you know, tired after being up for a couple of hours and he would have to sleep for two or three hours, that doing things like cooking and the laundry wore him out, that he really wasn't able to drive around because that wore him out as well. In fact, if you look even just at the objective medical evidence, we see that in the disability period starting in April of 2000 and then up to October of 2002, just a few months before he died of a heart attack, Mr. Dow had at least five episodes of fainting, three of which were deemed severe and took him to the emergency room. At the end of that period, the October 2002 period, he was fainting just sitting in a computer class. And what we think that evidence suggests is that Mr. Dow really could not do the things that the ALJ determined he could do. With respect to the autopsy report, then, it is necessarily tied to properly crediting the testimony offered with respect to the physical limitations, pain and fatigue. And what we believe the better argument is that it's not necessarily that the autopsy report requires a finding of meeting the exact criteria of the listing impairment, the listed impairment, but rather that it would compel a finding of medical equivalence for at least some period. At the very least, the autopsy report directly contradicts any conclusion that Mr. Dow did not suffer from a cardiac illness which, at least in quantitative measure, met the listing requirements. And you're not claiming that it meets that prong of the marked physical limitation. You're saying we need to look to the other evidence for that. Is that right? I believe that's right. I think it would be impossible for the autopsy report to actually address his physical limitations, obviously, due to the circumstances under which it is written. Yes. Then the marked limitation of physical activity, then, the ALJ made some conclusions about that, and under our standard of review, we need only to find the ALJ's conclusions were based on substantial evidence. Can you explain why they were not, there's no substantial evidence in the record supporting the ALJ's conclusions on that point? Yes, Your Honor. We believe the most instructive way to look at this is actually to work from the residual functional capacity backwards. At the end of the deliverative process, the ALJ determined that Mr. Dow could work either as a security guard or in the assembly of small parts. And we would suggest that the only way you could reach that conclusion is to not evaluate the evidence and come up with substantial evidence in favor of that conclusion, but basically to completely ignore some of the subjective and, in fact, the probative subjective symptom testimony with respect to his physical limitations. For example, as I've mentioned, Mr. Dow had at least five episodes of fainting in the, during the disability period, three of which are severe. The first of these occurred when he was working as a parking lot attendant, probably a similar job and, in fact, admittedly a similar job to being a security guard. The last occurred while he was just sitting at a computer typing. Those physical limits, that's objective medical evidence that is inconsistent with a finding that the man could work as a security guard and that there are no specific findings in the record, specific, clear and convincing findings in the record that suggest that any of that objective medical evidence is wrong. There is no evidence of malingering and there is evidence of at least some impairment that could cause these symptoms. And in that situation, what the ALJ is required to do is make specific, clear and convincing findings with respect to why the objective medical evidence with respect to fainting, for example, is not to be considered probative with respect to his ability to act as a security guard. Similarly, with respect to his capacity to work in the assembly of small parts, there is subjective testimony from Mr. Dow and his widow that Mr. Dow had been having problems folding socks, that he had problems fitting his belt through his belt loops. It would be impossible to credit that testimony, to believe that testimony and conclude that he was capable of working in the assembly of small parts. And yet it's uncontradicted testimony and, again, there's no evidence of malingering and there is evidence of medical impairments that could cause those limitations and yet there are no clear and legitimate reasons set forth in the ALJ's decision as to why those limitations should not be believed. In fact, what the ALJ says is she has no reason to dispute the veracity of the statements that were offered by Ms. Dow. And what we think the ALJ might have done is become preoccupied with some of the obviously irrelevant things in the ALJ's decision, which had no bearing on his physical limitations but might have been found distasteful. There is a long summary of past drug abuse in the ALJ's decision. And yet at the end, of course, we're all the ALJ is forced to realize that there's no evidence of that anywhere near the disability period, in fact, for several years prior to the disability period. If you work backwards, then, from what the ALJ said Mr. Dow could do, it's clear that she was forced to disregard much of the testimony offered with respect to what he couldn't do, and she simply didn't offer reasons that are adequate under precedent for doing so. We do want to mention that with respect to the autopsy report, if it's not, if the autopsy report does not compel a finding of medical equivalence to a listed impairment, we believe at the very least it is inconsistent with some of the findings that he didn't have a heart problem. There is some evidence in the record to the extent that his heart was fine, that he had a cardiac exam just a month before he died of a heart attack, and the conclusion was that his EKG was okay. There's an abnormal EKG in the record. There's an okay EKG in the record. The government makes the argument that it's possible to just have this severe coronary disease until the day you die, and it just doesn't manifest itself. I think when pressed, Your Honor, we would have to agree that that is possible, but there's no evidence in the record that that's what happened. No doctor actually ever looked at the autopsy report and offered any evidence to the ALJ. The doctor for the government, Dr. Warner, in his residual functional capacity assessment in May of 2003, which is actually after the autopsy report had been concluded, simply found that the medical evidence did not indicate any life-threatening disease. But the notations in the record clearly indicate he did not have the autopsy report before him. He did not review it, despite the fact that he was asked to take a look at this and find out whether or not the autopsy report could be consistent with a finding of no disability. Who's burden was it to ensure a doctor testified with respect to the autopsy report? We believe it's the ALJ's burden in this case. Ms. Hilfinger Dowell was not represented by counsel at the hearing, and the ALJ's duty to develop the record is particularly heightened in such a case. And when presented with evidence like this, obviously Ms. Hilfinger Dowell is not a medical expert. The ALJ has the power to seek that testimony and should have done so. Roberts. Thank you, counsel. Thank you. Your time has expired. Counsel for the government. Good morning.  Ms. Bond. Your Honors, Klayman's death from coronary artery disease in this case is not dispositive. The standard for assessing disability under the Social Security Act is twofold. First, Klayman had to prove that he had a medically determinable impairment that could be expected to result in death or could be expected to last for a continuous period of not less than 12 months. Second, Klayman had to prove that his impairments rendered him unable to perform substantial gainful activity for a consecutive 12-month period. The medical evidence in this case did not show that the Klayman had satisfied the second part of the disability standard. Despite evidence of blocked arteries, the treatment records consistently showed that Klayman had normal cardiac examinations. Diagnostic tests such as x-rays, EKGs, and exercise stress testing were essentially normal. When Klayman did complain of chest pain, his doctors described it as atypical for ischemia. When Klayman did seek treatment, his doctors did not prescribe medication for his heart condition. And when Klayman was examined by Dr. Narvaez, he stated that he had no difficulty with his activities of daily living, which would contradict his wife's testimony and prior statements that Klayman had made regarding his daily activities. Klayman's treating doctors did not assess any functional or work limitations during his lifetime. And the only physician in opinion in the record, Dr. Warner, who reviewed the evidence, assessed work limitations that were consistent with the ALJ's RFC finding for a restricted range of light work activity. Dr. Warner had specifically noted that during Klayman's lifetime, the medical evidence did not indicate that he had a life-threatening disease, which would have resulted in disability. Given this evidence, there was no reason for the ALJ to find the claimant was disabled during his lifetime. And if there are no further questions, we ask that this Court affirm the ALJ's decision. I have one question. Between the two briefs on the listing for O4C, I believe one quoted the 2006 version and one quoted the 2002 version of the listing language, which changed between those two versions. Which is the one that would be applicable to Mr. Dowell's case? It would be the version that was in effect at the time of the ALJ's decision. Okay. So that would be the 2002. If there are no further questions, counsel. Thank you. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Ikuta